IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JESSICA BOND, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.  SA-12-CV-351-XR |
| | § | |
| WELLS FARGO BANK, N.A., | § | |
| | § | |
| *Defendant*. | § | |

## ORDER

On this day the Court considered Defendant's motion for summary judgment (Doc. No. 22). For the following reasons, the Court GRANTS the motion.

### I. Background

#### A. Factual Background

Plaintiff Jessica Bond ("Plaintiff") and Mark Bond[1] executed a promissory note on October 12, 2001 for the amount of $93,177.00 to purchase a parcel of real property located at 16731 Lilly Crest, San Antonio, Texas 78232.[2] Repayment of the note was secured by a deed of trust that was also executed by both Plaintiff and Mark Bond.[3] Defendant Wells Fargo Bank, N.A. ("Defendant")[4] was the mortgage servicer of the loan for the time period relevant to this lawsuit.[5]

---

[1] Defendant asserts that Mark Bond is Plaintiff's former husband. (Mot. Summ. J. ¶ 3.)
[2] *See* Note, Doc. No. 22-3.
[3] *See* Deed of Trust, Doc. No. 22-4.
[4] Wells Fargo Bank, N.A.'s predecessor was Wells Fargo Home Mortgage. (Mot. Summ. J. ¶ 4.) In this opinion, it is not necessary to distinguish between the actions of Wells Fargo Bank, N.A. and Wells Fargo Home Mortgage. The Court will therefore refer to both entities collectively as "Defendant."
[5] In her amended complaint, Plaintiff asserts that Defendant "is the owner and holder of the note and deed of trust." (Am. Compl. at 1.) However, summary judgment evidence shows that Defendant was the mortgage servicer. (*See, e.g.*, Notice of Substitute Trustee Sale, Doc. No. 22-9.)

Plaintiff alleges that she eventually fell behind on her mortgage payments to Defendant due to a divorce and job loss. Plaintiff further alleges that sometime in early 2010, Defendant advised her that she could apply for "a hardship, loan modification, or reinstatement," which she understood would keep the house out of foreclosure and allow her the opportunity to catch up on, and lower, her payments.[6] Plaintiff alleges that since that time, she has relied on "Defendant's promises" and done everything Defendant required for a modification.[7] Despite her efforts, Plaintiff alleges that she "has continuously gotten the run around, being told to send in the same documents two or three times because the Defendant 'has not received all of the proper paperwork.'"[8]

In March 2010, Plaintiff alleges that Defendant sent her a written agreement "with a schedule of payments to do a trial period for a modification."[9] Plaintiff alleges that she sent in the "required amount" for the modification but that she "was later told that even though the offer to modify was in writing, and accepted by Plaintiff, Defendant was not going to abide by the terms of the contract."[10]

A foreclosure sale of the property was scheduled for April 3, 2012.[11] That same day, Plaintiff filed her original petition in the 150th Judicial District Court of Bexar County, Texas, and the court issued a restraining order decreeing that Defendant was enjoined from "seeking to foreclose" on the property.[12] Despite the restraining order, the foreclosure sale took place and the property was sold for $122,467.11.[13]

---

[6] Am. Compl. at 2.
[7] Am. Compl. at 2.
[8] Am. Compl. at 2.
[9] Am. Compl. at 2.
[10] Am. Compl. at 2.
[11] *See, e.g.*, Notice of Substitute Trustee Sale, Doc. No. 22-9.
[12] *See* Doc. No. 1-6. Specifically, the restraining order stated:
   IT IS ACCORDINGLY ORDERED, ADJUDGED, AND DECREED that the Defendant, WELLS FARGO BANK, N.A., their agents, servants, and employees are restrained and enjoined

**B. Procedural Background**

Defendant removed the action to this Court on April 16, 2012, based on diversity. The Court granted Plaintiff leave to file an amended complaint on June 6, 2012.[14] In her amended complaint, which remains the live pleading, Plaintiff alleges a sole cause of action for breach of contract and seeks injunctive relief,[15] a declaratory judgment that any trustee sale of the property is null and void, costs, and attorney's fees. Plaintiff specifically indicates that she "is not seeking any monetary damages, only equitable relief, and specific performance of the contract in question."[16]

Defendant filed a motion to dismiss the amended complaint on June 20, 2012.[17] On July 9, 2012, the Court issued an order converting the motion to dismiss to a motion for summary judgment and instructed the parties to submit all evidence in support of or in opposition to summary judgment by July 23, 2012.[18] Neither party timely responded to the Court's order. Because Defendant had not provided any evidence in support of summary judgment, the Court

---

during the pendency of this case from directly or indirectly depriving the Plaintiff, JESSICA BOND, of the quiet enjoyment of her homestead at 16731 Lilly Crest Drive, San Antonio, Texas 78232, and that said entity are [sic] further restrained and enjoined from interfering with the Plaintiff's use of the premises at 16731 Lilly Crest Drive, San Antonio, Texas 78232, or in any way from seeking to foreclose on said property during any time while this suit is pending.

[13] *See* Substitute Trustee's Deed, Doc. No. 22-10. Defendant contends that the restraining order was void and of no effect because it "failed to (1) state why the order was granted without notice; (2) define the threatened injury; and (3) describe why the threatened injury was irreparable." (Mot. Summ. J. ¶ 12.)

[14] *See* Text Order entered on June 6, 2012.

[15] Specifically, the amended complaint seeks:
A temporary restraining order and a temporary and final injunction to prohibit Defendant, their [sic] agents, servants, or employees from seeking to sell or taking any action to sell, transfer, convey, or dispose of Plaintiff's homestead, as described herein, and, further, that a temporary restraining order issue restraining Defendant from interfering with Plaintiff's exclusive use of her homestead and ordering Defendant to appear and show cause why Defendant should not be enjoined during the pendency of this suit from interfering with Plaintiff's exclusive use of her homestead pending a final hearing of this cause.

(Am. Compl. at 4-5.) The Court denied Plaintiff's request for a temporary restraining order at a hearing held on June 11, 2012. (*See* Doc. No. 14.)

[16] Am. Comp. ¶ 11.

[17] Doc. No. 16.

[18] Doc. No. 17.

denied the motion to dismiss but stated that Defendant was not precluded from filing another motion for summary judgment in the future.[19]

Defendant filed this motion for summary judgment on September 27, 2012. Defendant argues that it is entitled to summary judgment on Plaintiff's breach of contract cause of action because her claim has been "conclusively negated" since Defendant fully complied with the original terms and conditions of the note and deed of trust as well as the requirements of section 51.002 of the Texas Property Code. Defendant also argues that it is entitled to summary judgment because Plaintiff has not produced, and cannot produce, evidence to indicate that she has performed under the note and deed of trust, because she has not produced, and cannot produce, evidence to support her claim that Defendant breached any of the terms and conditions of either the note or deed of trust, and because she cannot produce evidence of damages because she has not sustained any damages.

To date, Plaintiff has not filed a response to Defendant's motion for summary judgment.

## II. Legal Standard

Summary judgment is proper when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails . . . to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Curtis v. Anthony*, --- F.3d ---, 2013 WL 823428, at *6 (5th Cir. 2013) (per curiam) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The court must draw reasonable inferences and construe evidence in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[19] *See* Doc. No. 20.

Although the evidence is viewed in the light most favorable to the nonmoving party, a nonmovant may not rely on "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence" to create a genuine issue of material fact sufficient to survive summary judgment. *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004).

### III. Discussion

The elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

Defendant's motion for summary judgment mainly focuses on whether Plaintiff can maintain a cause of action against Defendant for breach of the original, unmodified terms of the note and deed of trust. However, Plaintiff does not appear to assert that Defendant breached the unmodified terms of the note and deed of trust. Rather, Plaintiff's amended complaint, although somewhat ambiguous, appears to allege that Defendant either: 1) breached the terms of the original note and deed of trust, as modified by a loan modification agreement, or 2) breached an entirely separate contract under which Defendant agreed to modify the loan.

While Defendant's motion for summary judgment largely overlooks Plaintiff's allegations, Defendant's motion does address both allegations. Specifically, Defendant's motion for summary judgment states:

> 7. In an effort to assist Plaintiff, a Loan Modification Agreement was forwarded to Plaintiff on April 16, 2010. Plaintiff executed this agreement on May 5, 2010. However, the agreement was never executed by Mark Bond, the co-borrower under the original Note. As such, the modification request was denied.

5

> 8. Additional attempts to modify the loan were made in June of 2010. In particular, another loan modification agreement was sent to the Bonds on June 8, 2010. The second loan modification agreement was returned to Wells Fargo, but it too was not signed by Mark Bond. Consequently, the loan was removed from loss mitigation on September 8, 2010.[20]

Inherent in Defendant's statements are the arguments that Defendant did not breach either the modified terms of the note and deed of trust or a separate contract to modify the loan because neither a loan modification agreement nor a separate contract to modify the loan was formed. Plaintiff has also been put on notice that Defendant seeks summary judgment on both constructions of her breach of contract claim because, in its motion for summary judgment, Defendant explicitly states that Plaintiff's "entire cause of action may be dismissed with prejudice as a matter of law" and Defendant seeks "[t]hat the Court grants [sic] its Motion for Summary Judgment and dismiss Plaintiff's Amended Complaint with prejudice to the re-filing of the same." Accordingly, the Court will address whether Defendant is entitled to summary judgment on both constructions of Plaintiff's breach of contact cause of action.

## A. Cause of Action for Breach of the Modified Terms of the Note and Deed of Trust

In her amended complaint, Plaintiff alleges that she was "told that even though the offer to modify was in writing, and accepted by Plaintiff, Defendant was not going to abide by the terms of the contract."[21] If Plaintiff's statement is construed as alleging that Defendant breached the modified terms of the note and deed of trust, the Court finds that Defendant is entitled to summary judgment on the claim for several reasons.

## 1. No Evidence that a Valid Loan Modification Agreement was Formed

"It is elementary that parties having the power to make a contract have the power to modify it." *Mandril v. Kasishke*, 620 S.W.2d 238, 244 (Tex. Civ. App.—Amarillo 1981, writ

---

[20] Mot. Summ. J. ¶¶ 7-8 (citations omitted).
[21] Am. Compl. at 2.

6

ref'd n.r.e.). "However, the new or modifying agreement must possess the essential elements of a contract." *Id.* "The elements required for the formation of a valid contract are: (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Thornton v. AT & T Advertising, L.P.*, 390 S.W.3d 702, 705 (Tex. App.—Dallas 2012, no pet.). "Whether the parties reached an agreement is a question of fact. Whether an agreement is legally enforceable, however, is a question of law." *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 72 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (citation omitted).

Defendant attached two "Loan Modification Agreement" documents to its motion for summary judgment. One loan modification agreement document was prepared on April 16, 2010 and the other loan modification agreement document was prepared on June 8, 2010. The terms of both loan modification agreement documents state that the agreements would have been between the "Lender" and the "Borrower," and both documents define the "Lender" as "Wells Fargo Bank, N.A." and define the "Borrower" as "Jessica L. Bond and Husband, Mark A. Bond." The signature pages of both documents also provide separate spaces for the signatures of Plaintiff, Defendant, and Mark Bond. Plaintiff, however, is the only signatory on both loan modification agreement documents. Thus, it appears that neither loan modification agreement document represents a valid contract because neither document was signed by all parties to the agreement.

The Court recognizes that a signature is not necessarily required for the execution of a document. As the Texas Supreme Court explained in *Mid-Continent Casualty Co. v. Global Enercom Management, Inc.*, 323 S.W.3d 151, 157 (Tex. 2010) (per curiam):

> If a written draft of an agreement is prepared, submitted to both parties, and each of them expresses his unconditional assent thereto, there is a written contract . . . .

7

> [I]f there is a writing, there need be no signatures unless the parties have made them necessary at the time they express their assent and as a condition modifying that assent . . . . An unsigned agreement all the terms of which are embodied in a writing, unconditionally assented to by both parties, is a written contract . . . .

(alterations in original) (quoting *Simmons & Simmons Constr. Co., Inc. v. Rea*, 286 S.W.2d 415, 418 (Tex. 1956)); *see also Travelers Ins. Co. v. Chicago Bridge & Iron Co.*, 442 S.W.2d 888, 895 (Tex. Civ. App.—Houston [1st Dist.] 1969, writ ref'd n.r.e) ("The term 'execute' means 'to finish' or 'make complete.' The execution of a contract includes the performance of all acts necessary to render it complete as an instrument."). Here, however, there is no evidence showing that Defendant ever unconditionally assented, through a signature, statement, action or otherwise, to either loan modification agreement document.[22] There is also no evidence that Mark Bond executed either loan modification agreement document by any means, nor is there evidence establishing that Plaintiff had authority to execute either loan modification agreement document on Mark Bond's behalf. Accordingly, because there is no evidence that the loan modification agreement documents were executed by all necessary parties, the record does not support a finding that a valid loan modification agreement was formed.[23]

---

[22] To the contrary, evidence suggests that Defendant never executed either loan modification agreement document. After both loan modification agreement documents were prepared, Defendant sent Plaintiff and Mark Bond a letter on July 12, 2010 indicating that Defendant was "unable to adjust the terms of your mortgage . . . because we have not received your signed modification agreement." (*See* Doc. No. 22-7.) Defendant sent another letter to Plaintiff and Mark Bond on September 8, 2010 stating that "after carefully reviewing the information you've provided, we are unable to adjust the terms of your mortgage." (*See* Doc. No. 22-7.) The September 8, 2010 letter further explained: "We can only process your request for payment assistance if we have additional information from you. We have been unable to reach you to discuss your situation. For that reason, you have not been approved for assistance with your current payment challenges."

[23] In its answer, Defendant asserts the statute of frauds as an affirmative defense to Plaintiff's breach of contract claim. (*See* Doc. No. 21 ¶ 14.) The statute of frauds for loan agreements provides that a "loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative." TEX. BUS. & COMM. CODE § 26.02(b). Under both loan modification agreement documents in this case, the unpaid principal balance that Plaintiff would have promised to repay was well over $50,000. Thus, even if one of the loan modification agreement documents represented a valid agreement, it appears that Plaintiff would be unable to enforce the agreement against Defendant because Defendant did not sign either loan modification agreement document. Nonetheless, the Court does not consider the statute of frauds defense in ruling on Defendant's motion for summary judgment because Defendant did not raise the statue of frauds argument in its motion.

**2. No Evidence that Plaintiff Tendered Performance**

Even if the record established that Plaintiff entered into a valid loan modification agreement with Defendant, Defendant would be entitled to summary judgment on Plaintiff's cause of action for breach of the modified terms of the note and deed of trust because there is no evidence establishing that Plaintiff performed under either the original or modified terms of the note and deed of trust.

Under the original terms of the note, Plaintiff was required to make monthly payments of $588.95. Pursuant to the loan modification agreement document prepared on April 16, 2010, Plaintiff would have been required to make slightly lower monthly payments of $568.37 beginning on July 1, 2010 and "continuing thereafter on the same day of each succeeding month until principal and interest [were] paid in full." The loan modification agreement document prepared on June 8, 2010 would have required monthly payments of $569.91 beginning August 1, 2010.

Defendant attached a copy of a Customer Account Activity Statement to its motion for summary judgment.[24] The Customer Account Activity Statement shows the payment history of Plaintiff's mortgage loan from April 28, 2009 through April 16, 2012. The Customer Account Activity Statement shows that from December 1, 2009 through April 16, 2012, Defendant received only one payment of $557.82.[25] There is no evidence in the record, from the Customer Account Activity Statement or otherwise, showing that Defendant has received any other payments on the loan since before December 2009. A single payment of $557.82 is less than would have been required for even a single monthly payment under the original terms of the note or under either of the loan modification agreements. Thus, because Plaintiff has failed to

---

[24] Doc. No. 22-6.
[25] The payment was received on May 7, 2010.

establish that she performed under either the original or modified terms of the note and deed of trust, Defendant is entitled to summary judgment on Plaintiff's breach of contract claim. *See Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990) ("It is a well established rule that a party to a contract who is himself in default cannot maintain a suit for its breach." (internal quotation marks omitted)).[26]

### 3. No Apparent Breach

Furthermore, it is not apparent from the record that Defendant breached either the original or modified terms of the note and deed of trust. In her amended complaint, Plaintiff does not specify what conduct allegedly amounted to a breach of contract. Rather, Plaintiff broadly alleges that she was told that "Defendant was not going to abide by the terms of the contract" and that "Defendant's conduct as described [in the amended complaint] amounts to breach of contract."

From the record, the Court cannot ascertain that Defendant breached either the original or modified terms of the note or deed of trust. Plaintiff concedes, and the record demonstrates, that Plaintiff fell behind on her payments and "failing to pay in full any monthly payment" constituted default under the note and deed of trust.[27] Upon default, Defendant was permitted, pursuant to the deed of trust, to accelerate the debt and invoke the power of sale so long as Defendant complied with the provisions of the deed of trust and applicable law. Neither of the proposed loan modification agreements would have altered these remedies. Evidence in the record shows that Defendant complied with requirements of the deed of trust and section 51.002

---

[26] Also, because there is no evidence in the record demonstrating that Plaintiff tendered performance or was ready, willing, and able to tender performance, she would not be able to obtain her requested remedy of specific performance. *See DiGiuseppe v. Lawler*, 269 S.W.3d 588, 593 (Tex. 2008) ("An essential element in obtaining the equitable remedy of specific performance is that the party seeking such relief must plead and prove he was ready, willing, and able to timely perform his obligations under the contract.").
[27] *See* Note ¶ 6, Doc. No. 22-3; Deed of Trust ¶ 9, Doc. No. 22-4.

of the Texas Property Code, which governs the sale of real property under a power of sale conferred by a deed of trust, by sending Plaintiff and Mark Bond notices of default and intent to accelerate, providing opportunities to cure, and sending notices of sale prior to the foreclosure sale of the property. Plaintiff does not indicate how Defendant's conduct may have otherwise constituted a breach of either the original or modified terms of the note or deed of trust.

**B. Cause of Action for Breach of a Separate Contract to Modify the Loan**

In her motion for leave to file an amended complaint, Plaintiff states that she "now wishes to sue Defendant for breach of a written offer, which was accepted by Plaintiff, to modify her mortgage."[28] Plaintiff's statement could be indicative of an attempt to assert a cause of action for the breach of an entirely separate contract—*i.e.*, a contract independent from the original note and deed of trust—under which Defendant allegedly agreed to modify the mortgage loan. Nonetheless, if Plaintiff's amended complaint is construed as asserting a cause of action for breach of a separate contract to modify the loan, the Court finds that Defendant is entitled to summary judgment on the claim for the following reasons.

In her amended complaint, Plaintiff asserts that Defendant sent her "a written agreement with a schedule of payments to do a trial period for a modification" and that she "sent in the required amount for this modification."[29] Plaintiff does not provide any further details about the "written agreement" or the "schedule of payments" to which she is referring.

Upon review of the evidence in the record, it appears that Plaintiff could be referring to a "Special Forbearance Agreement" that was sent to Plaintiff by Defendant in a written

---

[28] Mot. Leave at 1, Doc. No. 9.
[29] Am. Compl. at 2.

correspondence dated September 25, 2009 and that was signed by Plaintiff on October 5, 2009.[30]

The terms and conditions of the forbearance agreement provide in part:

> 1. . . . The indebtedness of the referenced loan is in default and in consideration of extending forbearance for a period of time, it is necessary that you indicate your understanding and acceptance of the terms of the forbearance agreement by immediately signing and returning this agreement.
>
> 2. Payments must be made strictly in accordance with the enclosed payment schedule and forbearance agreement conditions. This plan is an agreement to temporarily accept reduced payments or maintain regular monthly payments during the plan specified below. Upon successful completion of the three regular payments as outlined in this plan, your loan will be reviewed for a Loan Modification, based on investor approval, which will satisfy the remaining past due amount on your loan.
>
> 3. The lender is under no obligation to enter into any further agreement, and this forbearance shall not constitute a waiver of the lender's right to insist upon strict performance in the future.
>
> 4. All of the provisions of the note and security instrument, except as herein provided, shall remain in full force and effect. Any breach of any provision of this agreement or non-compliance with this agreement, shall render the forbearance null and void, and at the option of the lender without further notice to you may terminate this agreement. The lender, at its option, may institute foreclosure proceedings according to the terms of the note and security instrument without regard to this agreement.

The forbearance agreement's plain language establishes that it was not a contract to modify the loan. Rather, the agreement merely provided that, if Plaintiff made the requisite payments, her loan would be "reviewed" for a modification and that a modification would be subject to investor approval. Additionally, the record does not establish that Plaintiff would have even been entitled to a review for a loan modification under the agreement because there is no evidence establishing that Plaintiff tendered the requisite payments. Pursuant to the terms of the special forbearance agreement, Plaintiff was required to make payments "strictly in accordance" with an "enclosed

---

[30] Defendant attached the "Special Forbearance Agreement" and written correspondence to Defendant's response in opposition to Plaintiff's request for a temporary restraining order. (*See* Doc. No. 13-2.) Defendant, however, did not attach the document to its motion for summary judgment.

payment schedule." Because the "payment schedule" is not in the record, a finding that Plaintiff made payments in accordance with the schedule cannot be supported.[31]

If Plaintiff is contending that the loan modification agreement documents themselves constitute separate written contracts to modify the loan, Defendant is entitled to summary judgment for reasons described in Section III, A of this opinion. Namely, the record does not support a finding that either loan modification agreement document represents a valid, fully-executed contract and the record does not show that Plaintiff tendered performance under the terms of either loan modification agreement document.

Plaintiff has not pointed to, and the Court is not aware of, any other document in the record that may constitute a separate contract to modify the loan.

## IV. Conclusion

As a result of the foregoing analysis, the Court finds that Defendant is entitled to summary judgment on Plaintiff's cause of action for breach of contract. Accordingly, Defendant's motion for summary judgment (Doc. No. 22) is GRANTED. No claims remain pending in this case.

The Clerk is directed to enter judgment that Plaintiff take nothing. Defendant is awarded its costs of court and must file a Bill of Costs in the form required by the Clerk of Court within fourteen days of the judgment.

---

[31] Furthermore, the record suggests that Plaintiff did not make the required payments. The terms and conditions of the forbearance agreement state that Plaintiff's loan would be reviewed for a loan modification "[u]pon successful completion of the three regular payments as outlined in this plan." There is no evidence that Plaintiff made three regular payments after signing the special forbearance agreement. To the contrary, after Plaintiff signed the forbearance agreement on October 5, 2009, the Customer Account Activity Statement shows that Defendant received one payment of $1,051.00 on November 30, 2009 and that no other payments were received by Defendant until a payment of $557.82 was received on May 7, 2010. No evidence, from the Customer Account Activity Statement or otherwise, shows that any subsequent payments were received by Defendant.

It is so ORDERED.

SIGNED this 1st day of April, 2013.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE